FILED

2020 Sep-30  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **NOEL WEBSTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 5:18-CV-1339-LCB** |
| | ) |
| **DR. ROBERT A. ALTENKIRCH,** | ) |
| ***et al.***, | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Noel Webster brings this action under 42 U.S.C. §§ 1983, 1988 against Drs. Darren Dawson, Mitchell W. Berbrier, and Christopher D. Ragsdale in their official capacities, and Drs. Robert A. Altenkirch, Berbrier, and Ragsdale in their individual capacities.[1] This cause is before the Court on Defendants' Motion to Dismiss (Doc. 44). Plaintiff has responded to the motion. (Doc. 47). Defendants have filed a reply brief in support of their motion to dismiss. (Doc. 48).

---

[1] Plaintiff conceded in his Response that Defendants Berbrier and Ragsdale were entitled to Eleventh Amendment Immunity, so the Defendants' Motion to Dismiss will be granted for those two Defendants. Thus, the Eleventh Amendment immunity analysis will apply to Defendant Dawson alone.

## I.     Legal Standards

### A. Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. International Univ*., 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief

requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### B. Subject-Matter Jurisdiction

"[I]mmunity issues are construed as challenges to the subject-matter jurisdiction of a federal court properly raised under Rule 12(b)(1) . . . [and] the jurisdictional challenge does not implicate the underlying merits of the case." *Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018) (first citing *Garrett v. Talladega Cnty. Drug & Violent Crime Task Force*, 983 F.Supp.2d 1369, 1373 (N.D. Ala. 2013); and then *Harris v. Bd. of Trs. Univ. of Ala.*,

846 F.Supp.2d 1223, 1231 (N.D. Ala. 2012)). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (internal citations omitted). However, "[f]actual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529. "[A]t issue in a factual 12(b)(1) motion is the trial court's jurisdiction [and] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 1529.

## C. Factual Background

Plaintiff Noel Webster was an employee of the University of Alabama in Huntsville ("UAH") who worked as the Studio/Facility Manager of the UAH Music Department. (Doc. 34 at 3). Plaintiff was hired on July 31, 2014, and his responsibilities included the coordination and management of the studio recording and live performance facilities for the UAH Music Department. (*Id.* at 3–4).

Defendant Ragsdale was Plaintiff's direct supervisor and Chair of the UAH Department of Music. (*Id.* at 4). Defendant Berbrier was the Dean of the UAH College of Arts, Humanities, and Social Sciences. (*Id.* at 3). Defendant Altenkirch was the President of UAH at the time of all the events alleged in Plaintiff's Complaint, and Defendant Dawson is the current President of UAH. (*Id.* at 3). While employed at UAH, Plaintiff's duties included "scheduling and coordination of department events, installation and management of all audio and video equipment, management of department inventory, implementation and maintenance of audio tools and systems, and preparation of reports regarding all inventory and facility use." (*Id.* at 4).

Beginning in September of 2015, Plaintiff started communicating concerns regarding contract work performed on the UAH Music Department's facilities. (*Id.* at 4). Plaintiff communicated these concerns to Defendant Ragsdale, Defendant Berbrier, and Defendant Altenkirch. Plaintiff continued to report these concerns until January 3, 2017, the day of his termination. (*Id.* at 4). The issues or concerns that Plaintiff raised to the Defendants included the following:

- The music department's emergency-lighting-disconnect relay box was removed from the wall and placed on the floor;
- The firewall was breached on the main-access corridor at the main transformer room, on the first floor, to run 220-volt power to the recording studio's transformer;
- The recording studio transformer was improperly installed with all-thread above the main access corridor and hidden with ceiling

tile. The transformer could fall at any time and would be fatal to anyone in the main corridor.

- The firewall was breached from the main transformer room above the main access corridor and provides 220-volt power to all breaker boxes and dimmer racks for Roberts Hall, which were improperly installed in the 3rd floor utility room.

- The utility room could only be accessed by a key, in a closet on the second floor, up a forty-foot ladder, jumping on a metal grate, walking above the second floor main access corridor, through a partially obstructed door, and crawl down into the utility room above room 206.

- The entire HVAC system for Roberts Hall is located on the roof with two-inch PVC condensation drain lines draining through the roof onto the utility room floor, and it constantly dumps water and sludge which clogs the utility room drain. The utility room floods so often that a wet/dry vacuum is kept on site. The main breaker boxes are improperly installed one inch off the floor; therefore, when it floods, the water gets into the breaker boxes and subsequently pours down the walls onto room 206.

- Breaker boxes were installed on the second floor in Room 206, which floods with rain water.

- Sewer drains were installed near the entrance to Roberts Hall, which backed up with raw sewage and poured overhead into the music department's offices.

- Roberts Hall stage lights were improperly wired: the lighting bar should be tied to dimmer racks and controlled by a lighting console so that the voltage can fade the lights and always be in the off position for changing fixtures. However, the light bar was wired hot directly to the breaker box. This wiring caused five-foot blue flame to arcs to the stage pins on the lighting bar.

- Roberts Hall was only wired for 20A power service, rather than 100A three-phase service with disconnect boxes and cam locks.

- There was no [a]isle lighting installed in Roberts Hall.

- All breaker boxes have to be readily accessible with no obstruction. The entire electrical system in Roberts Hall has to be removed and reinstalled correctly at ground level with the breaker boxes and dimmer racks on the stage.

(*Id.* at 4–7). Plaintiff was not responsible for repairing these issues, and he was not tasked with repairing or supervising the work. (*Id.* at 7). All of these issues fall under the purview and responsibility of the UAH Campus Architect. (*Id.*). These issues directly concerned the safety of the UAH community and general public because the concert hall was open for events and other purposes. (*Id.*). Plaintiff reported these safety concerns to the Madison County Fire Marshal after his safety concerns were left unaddressed by the Defendants Altenkirch, Ragsdale, and/or Berbrier. (*Id.*). UAH terminated Plaintiff's employment by letter which was dated December 8, 2016 with the termination becoming effective on January 3, 2017. (*Id.* at 8). Plaintiff alleges that he was terminated due to reporting his safety concerns. (*Id.*).

### D. Discussion

In part, the Defendants bring their Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserting that the Court lacks subject matter jurisdiction.[2] The Defendants argue in their Motion that the Court is divested of jurisdiction because Eleventh Amendment Immunity bars the Plaintiff's official-capacity claims against Defendant Dawson. Moreover, the doctrine of qualified immunity bars the Plaintiff's individual-capacity claims.

---

[2] "[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010).

**A. Official Capacity Claims**

**1.  Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment Immunity[3] has the nature of a jurisdictional bar. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974). "[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (citations omitted).

"Unlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001) (citing *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 389 (1998); *see Calderon*

---

[3] The phrase Eleventh Amendment Immunity is sometimes used as shorthand for a State's immunity from suit; however, the phrase is

> something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments."

*Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1307 (11th Cir. 2011) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1990)).

*v. Ashmus,* 523 U.S. 740, 745 n.2 (1998)). "The Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so" with the "ultimate guarantee . . . that nonconsenting states may not be sued by private individuals in federal court." *McClendon*, 261 F.3d at 1256–57 (internal citations omitted). "[T]he Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds." *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993) (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985)). However, "[t]he Eleventh Amendment protects no personal assets in 'individual' or 'personal' capacity suits in federal court." *Id.* (citations omitted).

Plaintiff brings a § 1983 claim against Defendant Dawson in his official capacity. "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal citations omitted). Therefore, "[a] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016) (internal citations omitted). Alabama officials are

immune from suits in their official capacities because the state has not waived its sovereign immunity nor has Congress abrogated the state's immunity in § 1983 cases. *Id.* at 1234 (internal citations omitted). Thus, Alabama officials sued in their official capacities are immune from the claims against them for damages a state-caused harm. *Id.*

Plaintiff is suing Dr. Dawson in his official capacity only as the current President of UAH for injunctive relief.[4,5] (Doc. 34 at 3). In the Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff did not argue that Defendants Berbrier or Ragsdale are being sued in their official capacities. (Doc. 47 at 12). As noted above, the Plaintiff conceded that Defendants Berbrier and Ragsdale in their official capacities are entitled to Eleventh Amendment immunity. Thus, the official-capacity claims against Berbrier and Ragsdale are dismissed, and the Court will evaluate the Eleventh Amendment immunity argument with respect to Defendant Dawson alone. (Doc. 47 at 5 n.1).[6]

---

[4] Pursuant to Fed. R. Civ. P. Rule 41, the Court dismissed The Board of Trustees of the University of Alabama; Robert A. Altenkirch in his official capacity only; Ronald W. Gray; Karen P. Brooks; Hon. John H. England, Jr.; Joseph C. Espy, III; Barbara Humphrey; Harris V. Morrissette; William Britt Sexton; William S. Starnes; Finis E. St. John, IV; Marietta M. Urquhart; James W. Wilson; III; Wallace D. Malone, III; Eric G. Mackey; Vanessa Leonard; Scott Phelps; Kenneth L. Vandervoort, M.D.; and Governor Kay Ivey in their individual and official capacities. (Doc. 45 at 2–3].

[5] Dr. Dawson was not the President of the University of Alabama at Huntsville at the time of the Plaintiff's termination, thus is not sued in his personal capacity.

[6] The Plaintiff maintains claims for damages against Defendants Altenkirch, Berbrier, and Ragsdale in their individual capacities. (Doc. 47 at 13).

Plaintiff argues that Eleventh Amendment immunity does not apply to Defendant Dawson in his official capacity because Defendant Dawson is an official that has the authority to secure Plaintiff prospective relief. That argument relies on the *Ex parte Young* exception to Eleventh Amendment immunity that is discussed below.

### 2. *Ex parte Young*

Plaintiff argues that he is entitled to "prospective injunctive relief" from Defendant Dawson. In *Ex parte Young*, the Supreme Court fashioned a narrow exception to the immunity provided to states by the Eleventh Amendment. 209 U.S. 123 (1908). Under this exception, a plaintiff may sue a state officer in his official capacity for prospective injunctive relief "to prevent a continuing violation of federal law." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1308 (11th Cir. 2011) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). Plaintiff is suing Defendant Dawson in his official capacity; therefore, the Court must decide to whether the relief sought against Defendant Dawson is prospective injunctive relief and whether the termination of Plaintiff is a continuing violation of federal law.

### (a) Prospective Injunctive Relief

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state

treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted). Plaintiff seeks "reinstatement with seniority and benefits dating back to the date of [his] termination." (Doc. 34 at 15). Further, Plaintiffs seeks back pay. The question, then is whether reinstatement and back pay constitutes injunctive relief.

Back pay is a type of retroactive award in which Plaintiffs are not entitled to from state officials. *Lussier v. Dugger*, 904 F.2d 661, 670 (11th Cir. 1990). In *Quern v. Jordan*, the Supreme Court noted that it had rejected the idea that retroactive benefits are acceptable under the Eleventh Amendment simply by styling the relief as "equitable restitution." 440 U.S. 332, 337 (1979). Thus, the Court finds that the benefits dating back to the date of his termination would be a type of back pay, and back pay and retroactive benefits are not recoverable under the *Ex parte Young* exception. Therefore, the question now turns to whether the reinstatement with seniority constitutes prospective relief or merely a form of retroactive relief.

Generally, the Eleventh Circuit has held that reinstatement is a type of prospective injunctive relief "that fall[s] within the scope of the *Ex parte Young* exception." *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014). Therefore, the Court finds that reinstatement is prospective injunctive relief for *Ex parte Young* purposes, and no other relief is available to Plaintiff against Defendant Dawson in his official capacity.

**(b)Continuing Violation of Federal Law**

Next, the Defendant alleges that Plaintiff failed to allege a continuous and ongoing violation of federal law. (Doc. 44 at 8). An "ongoing and continuous violation of federal law" is required to invoke the *Ex parte Young* exception. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)). However, it is clearly noted that "[t]his requirement does not mean that the enforcement of the allegedly unconstitutional state statute actually must be in progress against the particular plaintiffs initiating suit." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999). The question before the Court is whether Plaintiff's termination constitutes a "continuous and ongoing violation of federal law."

"*Young* [focuses] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law . . . ." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). "[A] plaintiff may not use the [*Young*] doctrine to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (citing *Papasan*, 478 U.S. at 277–78)). Plaintiff's termination is a discreet adverse employment and consists wholly of past conduct by Defendants. *Haven v. Bd. of Trustees of Three Rivers Reg'l Library Sys.*, 69 F.

Supp. 3d 1359, 1365 (S.D. Ga. 2014), vacated on other grounds, 625 F. App'x 929 (11th Cir. 2015) (citing *Summit Med. Ass'n*, 180 F.3d at 1336) (noting that Plaintiff's complaint did not avail itself of the *Ex parte Young* doctrine because the "complaint frames the [defendant]'s alleged discriminatory termination and retaliation as discreet conduct that occurred once in the past, and not as 'ongoing and continuous violations of federal law'").

Thus, Plaintiff's termination is not a "continuous and ongoing violation of federal law," and the *Ex parte Young* exception is not applicable in this case. Therefore, Defendant Dawson is entitled to Eleventh Amendment immunity, and the Court lacks jurisdiction over the official capacity claims. Because the Court does not have jurisdiction over these claims, it is dismissed against all Defendants. Accordingly, it is unnecessary to determine whether Defendants in their official capacities are persons under § 1983.

## B. Individual-Capacity Claims

Next, Defendants argue that Plaintiff has failed to sufficiently allege that Ragsdale, Altenkirch, and Berbrier acted in their individual capacities and that these Defendants are immune to the individual-capacity claims based on qualified immunity. (Doc. 44 at 11). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[O]fficials sued in their personal capacities, unlike

14

those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id*.

### 1. Qualified Immunity

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). "To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004) (citing *Harlow*, 457 U.S. at 818). "It is the burden of the governmental official to make [discretionary function] showing." *Id*. (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (2003)).

State officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. If "a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Harlow*, 457 U.S. at 818).

"To overcome a qualified immunity defense, the plaintiff must make two showings . . . First, she 'must establish that the defendant violated a constitutional right.' . . . Second, she must show the violated right was 'clearly established.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (internal citations omitted).

### (a) "Discretionary Authority"

"To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). "Discretionary authority includes the job-related powers and responsibilities that the public official has in the general fulfillment of his official duties." *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1344 (S.D. Fla. 2011) (citing *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004)). The Court in its analysis should look towards whether Defendants were acting within their discretionary authority when terminating Plaintiff. However, this issue of discretionary authority should not be conflated with the second issue of whether a violation of a clearly established constitutional right took place because "[a] defendant is not failing to act within his discretion merely because he or she is doing something unlawful." *Godby v. Montgomery Cty. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998). Plaintiff stated in his First Amended Complaint that

"Ragsdale and/or Berbrier retained the delegated authority, power, and discretion to terminate Plaintiff's employment." (Doc. 34, p. 8). Therefore, the Court finds that Plaintiff has sufficiently alleged a claim, if proven, that Defendants were acting within their discretionary authority when terminating the Plaintiff.

### (b) Violation of a Clearly Established Constitutional Right

Because Defendants have met their initial burden of asserting the qualified immunity defense with the showing Defendants were within their discretionary authority to terminate the Plaintiff, the burden shifts to Plaintiff to show that Defendants violated a clearly established constitutional right of Plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"To prove First Amendment retaliation, a plaintiff must show that '(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Muldrow v. Davis*, 433 F. App'x 888, 890 (11th Cir. 2011) (quoting *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quotation marks omitted)). To prove the third element, "the plaintiff must show that the defendant was subjectively motivated to take the adverse

action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citing *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

In this case, Plaintiff has made only conclusory allegations that there was a causal connection between his speech and termination.[7] In his First Amended Complaint, Plaintiff states that "UAH terminated Plaintiff because of the complaints and disclosures made to Ragsdale, Berbrier, and Altenkirch." (Doc. 34 at 8). Therefore, the Court accepts that the Plaintiff made complaints and disclosures to the Defendants. Also, the Court accepts that the Defendants terminated the Plaintiff. However, there are no facts that are pleaded that show that these two facts are linked. Plaintiff merely noted that the termination followed the complaints and does not speak to the Defendants' subjective motivation to stifle his speech. The temporal connection is that Plaintiff began expressing his safety concerns in September of 2015 and his termination became effective in January of 2017. Plaintiff never stated when he reported the safety issues, so the Court cannot determine if there is any temporal connection between the speech and termination. Thus, the Plaintiff's causal allegation is merely conclusory. Therefore, accepting Plaintiff's well pleaded facts as true, Plaintiff has failed to plausibly allege a cause of action for which relief could be granted.

---

[7] Plaintiff's termination was the adverse employment action alleged by the Plaintiff.

Because Plaintiff failed to plausibly allege a required element of the constitutional violation, he has failed to meet his burden of showing that Defendants violated that constitutional right. Therefore, he has failed to plead facts which, if true, would overcome the defendants' qualified immunity. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (finding that "a plaintiff who fails to allege both elements of a 'class of one' equal protection claim has not met its burden of showing that the defendant's conduct violated a right embodied in the Constitution."). Thus, Defendants are entitled to qualified immunity, and the individual-capacity claims against the Defendants are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 44) is **GRANTED** and this case is hereby **DISMISSED WITH PREJUDICE**. A separate judgment will follow.

**DONE** and **ORDERED** September 30, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE